UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

| | | |
|---|---|---|
| GIOVANNI WRIGHT, | ) | |
| | ) | |
| Petitioner, | ) | Civil Case No. 19-90-REW-CJS |
| | ) | |
| v. | ) | |
| | ) | |
| BRAD ADAMS, WARDEN, | ) | **RECOMMENDED DISPOSITION** |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on further preliminary review of Petitioner Giovanni Wright's *pro se* Petition Under 28 U.S.C. § 2254 For a Writ of Habeas Corpus by a Person in State Custody. (R. 1).  Pursuant to local practice, this matter has been referred to the undersigned for consideration and preparation of a Recommended Disposition under 28 U.S.C. § 636(b).

After conducting an initial preliminary review of Wright's petition as required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court concluded that Wright's petition appeared untimely. (*See* R. 9).  However, before recommending dismissal of Wright's petition, Wright was ordered to show cause as to why his petition was not time-barred and Respondent was ordered to respond.  (R. 9); *see Day v. McDonough*, 547 U.S. 198, 210 (2006).  Wright and Respondent have both responded and further briefed the issue.  (R. 13, 16, 17, 19, 21).  Upon review, it will be recommended that Wright's petition **be dismissed** as untimely.[1]

---

[1] This Recommended Disposition provides Wright with notice that his petition appears to be time-barred.  The objection period, which is explained at the conclusion of this Recommended Disposition, gives Wright the opportunity to present his position on the issue.  *See Day*, 547 U.S. at 210.

I.      **PROCEDURAL HISTORY**

In 2012, a Kentucky jury found Wright guilty of first-degree robbery, second-degree assault, tampering with physical evidence, second-degree fleeing and evading police, and being a second-degree persistent felony offender.  (R. 1-2, Page ID 55; R. 19-2, Page ID 184).  He was sentenced to twenty years on the first-degree robbery conviction, with lesser terms on the remaining convictions running concurrently, for a total of twenty years of imprisonment.  (R. 19-2, Page ID 185).  On February 20, 2014, the Kentucky Supreme Court affirmed all of his convictions except for the second-degree-assault conviction, which it reversed and remanded.  *Wright v. Commonwealth*, No. 2012-SC-000210-MR, 2014 WL 702184, at *9 (Ky. Feb. 20, 2014).  Wright unsuccessfully pursued state court post-conviction relief under Kentucky Rule of Criminal Procedure 11.42.  (*See* R. 1-5, Page ID 77; R. 1-6, Page ID 90).

Wright asserts that he was in an Ohio prison on a detainer during some of the time that the Kentucky Supreme Court was deciding his appeal.  (R. 1, Page ID 13).  He states that when he was returned to Kentucky for confinement in December 2015, he asked his former counsel about the status of his direct appeal but received no response.  (R. 13, Page ID 142).  It is unclear precisely when Wright learned about the result of his direct appeal but, at the latest, he knew about it by March 11, 2016, because that is the day a letter from him was filed in the Kenton Circuit Court, wherein he asked to be placed on the docket to address the Kentucky Supreme Court's remand.  (R. 19-2, Page ID 205).   The Kenton Circuit Court held a hearing, without Wright being present, on April 11, 2016, dismissing the second-degree assault conviction, which, in effect, left Wright's twenty-year sentence unchanged. (*See id.* at 206).  The order from this proceeding was entered on April 22, 2016, an important date in Wright's estimation, as will be later explained.

2

Under the prison mailbox rule,[2] Wright filed his § 2254 petition on July 9, 2019, raising five claims: (1) the trial court erred by failing to grant a directed verdict on his assault charge; (2) the trial court erred by failing to instruct on a lesser-included offense; (3) the trial court erred in denying his motion to suppress; (4) he did not receive a fair and impartial jury of his peers; and (5) he received ineffective assistance of counsel. (*See* R. 1, Page ID 10, 15, 23-34).

The Court's show cause order determined that Wright's petition appeared to have been filed over four years after his conviction became final under 28 U.S.C. § 2244(d)(1)(A) and was thus untimely. (R. 9, Page ID 126). This conclusion was reached by noting that his conviction became final on May 21, 2014, which was ninety days after the Kentucky Supreme Court decided Wright's direct appeal. (*Id.*).[3] Additionally, Wright's construed argument—that his purportedly delayed notice in learning of the result of his direct appeal warranted equitable tolling—was rejected, the Court concluding that, even if Wright were entitled to equitable tolling during the period when he purportedly did not know the result of his direct appeal, his petition was still untimely. (*Id.* at 128).

In response to the show cause order, Wright raises three arguments that he believes would render his petition timely: (1) he is entitled to equitable tolling until the Kenton Circuit Court dismissed his second-degree-assault conviction via order on April 22, 2016 (R. 13, Page ID 145); (2) his judgment of conviction was not finalized until April 22, 2016 (*id.* at 146); and (3) his limitations period did not begin to run until he was returned to a Kentucky prison (*id.* at 141). Respondent maintains that Wright's petition is time-barred. (R. 16).

---

[2] "Under the prison mailbox rule, a habeas petition is considered filed when the prisoner provides the petition to prison officials for filing." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 456 (6th Cir. 2012).

[3] The Court's prior show cause order contains a full analysis of the timeliness of Wright's petition. (*See* R. 9).

3

## II.    ANALYSIS

### A.    The Court's Equitable Tolling Analysis Remains Unchanged

The Court first considers Wright's argument that he is entitled to equitable tolling until April

22, 2016.  Equitable tolling permits a court to toll the statute of limitations when "a litigant's failure

to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's

control."  *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011) (quoting *Robertson v.*

*Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)).  A petitioner bears the burden of showing that he is

entitled to equitable tolling by demonstrating that both "some extraordinary circumstance stood in

his way and prevented timely filing," and "he has been pursuing his rights diligently."  *Holland v.*

*Florida*, 560 U.S. 631, 649 (2010) (internal citations omitted).  Pertinent here, "[e]xtraordinary

circumstances may . . . exist when petitioners face a substantial, involuntary delay in learning about

the status of their appeals."  *Robinson*, 424 F. App'x at 442 (citation omitted).

The Court assumed, arguendo, in the show cause order that Wright was entitled to equitable

tolling until, at the latest, March 11, 2016, because he wrote a letter to the state court clerk that day

concerning the Supreme Court's denial of his direct appeal.  (*See* R. 1, Page ID 104 (Kenton County

Circuit Court Docket Sheet Entry March 11, 2016 "LETTER – WANTS TO BE PLACED ON THE

COURT DOCKET TO READDRESS SUPREME CT'S DECISION").  However, Wright

disagrees with this date, summarily asserting that he should be entitled to equitable tolling until

April 22, 2016, which date the Kenton Circuit Court has a docket entry stating, "ORDER

DISMISSING" with the notation, "INDICTMENT BECAUSE SUPREME COURT REVERSED

APPEAL."  (R. 13, Page ID 144; R. 1, Page ID 104).  He is mistaken.

The purpose of equitably tolling the limitations period until March 11, 2016, was because

Wright purportedly suffered an involuntary delay in learning about the status of his appeal.  *See*

4

*Robinson*, 424 F. App'x at 442.  But he obviously knew about the status of his appeal on March 11, 2016, because he specifically mentioned it in a letter to the state trial court.  (R. 19, Page ID 205 (Letter from Wright – "The assault in the second degree has been reversed due to a final decision rendered from the Kentucky Supreme Court[].  I am asking to be placed on the Kenton Fourth Division Circuit court docket.")).  Accordingly, there is no basis to equitably toll the limitations period beyond the time he actually knew about the status of his appeal.

Moreover, this Court's prior show cause order took the most favorable view of equitable tolling—this Recommended Disposition does not.  Alternatively, the Court now concludes that Wright was not diligent in learning the status of his appeal.

Curiously, Wright never specifies when he learned about the resolution of his appeal.  He does generally claim that his confinement in Ohio from August 2013 to December 2015 made it impossible to discover the status of his appeal, generally citing a "lack of resources" to legal material, i.e., "a research data base," Westlaw or LexisNexis, and § 2254 forms.  However, "limited access to legal materials will not justify equitably tolling."  *Barnett v. Wainwright*, No. 19-3207, 2019 WL 2489655, at *2 (6th Cir. May 30, 2019); *see Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("[A]n inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations"); *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991) ("[W]hile pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer.").

Additionally, the Kenton Circuit Court docket sheet indicates that briefing on Wright's direct appeal was completed in March 2013.  (R. 1, Page ID 104).  While Wright indicates that he

attempted to learn the status of his appeal from his prior counsel, "he made no assertion that he ever inquired as to the status of his case with the state courts [until perhaps March 11, 2016],[4] although he had a 'duty to monitor the status of his appeal.'" *Barnett*, 2019 WL 2489655, at *2 (quoting *Brown v. United States*, 20 F. App'x 373, 375 (6th Cir. 2001)). Accordingly, Wright has failed to show that he was reasonably diligent in pursuing his rights when he waited nearly three years, from March 2013 (the date briefing was completed in his appeal) to March 2016 (when, at the latest, he would have known about the status of his appeal). *Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011) ("[T]his Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half, and we decline to do so here.").

**B.   Wright's Conviction Was Not Finalized on April 22, 2016**

Wright argues that his case "was not finalized until after the [state trial court] dismissed the remand from the Kentucky Supreme Court on April 22, 2016."[5] (R. 13, Page ID 142). As noted earlier, the Court concluded that his conviction became final on May 21, 2014.

Wright's argument appears to be based on a line of case law holding that, in some circumstances, a petitioner's judgment does not become final until "the conclusion of direct review of the new sentence he received at resentencing" based on a remand by a state appellate court. *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012); *see Eberle v. Warden, Mansfield Corr. Inst.*,

---

[4] Additionally, the Kenton Circuit Court docket sheet does not indicate any correspondence about Wright's appeal until the March 11, 2016 letter. (R. 1, Page ID 104).

[5] Elsewhere in his response, Wright states, "Technically, without a[n] annotation in the Court Docket and Case History, that the charge of Assault 2nd Degree has been removed from the case, the Judgment and Conviction has not been finalized." (R. 13, Page ID 146). The Court noted in a separate order that this might be an argument that Wright's conviction was still not finalized. (*See* R. 18, Page ID 164). However, as Wright has not raised such an argument in later briefing, the Court concludes that this language was meant to bolster Wright's argument that his conviction was not final until the Kenton Circuit Court issued its order dismissing the second-degree assault charge. If, however, the Court misunderstands Wright's argument, this section's discussion about the finality of judgment establishes that Wright's judgment has been finalized.

532 F. App'x 605, 610 (6th Cir. 2013) ("So, for example, in the case of a petitioner whose conviction is affirmed on direct review but whose case is remanded for resentencing because his initial sentence is infirm for some reason, the judgment is 'final' only after direct review of the punishment imposed at resentencing."). "As a result, the [limitations] clock resets then." *Eberle*, 532 F. App'x at 610. However, "not every modification that can be made to a sentence *automatically* restarts the statute of limitations." *Id.* For example, the Sixth Circuit has stated that "a limited resentencing [that] *benefits* [a] prisoner" does "not disturb the underlying initial judgment." *Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016). "A new, worse-than-before sentence, by contrast, amounts to a new judgment." *Id.*

Here, Wright did not receive a "new judgment" for purposes of resetting the statute of limitations clock. First, the removal of the second-degree assault conviction by the Kenton Circuit Court, even if it did not change Wright's ultimate sentence, was certainly a more beneficial outcome than retaining the conviction. What is even more clear is that the removal of this conviction did not make his sentence a "worse-than-before sentence." Accordingly, the Court's conclusion about the date that Wright's conviction was finalized remains unchanged. *Cortez v. Warden Chillicothe Corr. Inst.*, No. 17-3530, 2018 WL 2382456, at *2 (6th Cir. Feb. 16, 2018) ("Thus, even assuming that Cortez did in fact receive a revised sentence removing his sex-offender designation, it would undoubtedly have been a benefit to him, as it had only the potential to remove requirements, not impose new restrictions on his liberty. Therefore, . . . Cortez did not receive a new judgment for purposes of reviving the statute of limitations . . . .") (internal citations omitted).

C.    **The Limitations Period Did Not Start When Wright Was Returned to a Kentucky Prison**

Lastly, Wright summarily argues that his limitations period began to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through

7

the exercise of due diligence" under § 2244(d)(1)(D) rather than "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" under § 2244(d)(1)(A), as the Court concluded. (*See* R. 13, Page ID 141). He argues this is because "he was in another state and not in custody of the State of Kentucky where judgment had been executed and remanded to the lower court."[6] (R. 21, Page ID 229). Wright does not elaborate further, but the Court construes this as a rehash of his argument that he could not have learned about the Supreme Court of Kentucky's decision while he was imprisoned in Ohio.

Wright misunderstands the statute. The discovery of the "factual predicate of the claim" relates to when prisoners, through due diligence, should have learned of the evidence relating to the *claims* in their petition. *See Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004) ("The question under the provision is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care."). It does not relate to when they should have learned the facts concerning the *commencement of the limitations period.* And for the reasons already given, Wright should have learned about the status of his appeal long before he claims that he did.

## III.   CERTIFICATE OF APPEALABILITY

Wright is not entitled to a certificate of appealability (COA). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings for the United States District Courts, the District Court must issue or deny a COA when it enters a final order adverse to the applicant. A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473,

---

[6] (*See* also R. 21, Page ID 230-31).

484 (2000). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Wright's § 2254 petition or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a COA be denied upon the District Judge's entry of a final order in this matter.

## IV.  CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

1)      Wright's Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody (R. 1) **be dismissed;**

2)      A certificate of appealability **be denied** by the District Judge in conjunction with the Court's entry of its final order in this matter;

3)      Judgment in favor of the Respondent **be entered** contemporaneously with the Court's entry of its final order; and

4)      This case **be stricken** from the active docket of this Court.

9

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Recommended Disposition, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Signed this 24th day of February, 2020.



**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**

J:\DATA\habeas petitions\2254PrelimsSOL\19-90-REW Wright R&R final.docx